UNITED STATES, Appellee

v

WILLIAM LYONS, Sergeant First Class,
U. S. Army, Appellant

14 USCMA 67, 33 CMR 279

———

No. 16,525

May 24, 1963

*First Lieutenant Richard O. Skoog* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod, Captain Charles W. Schiesser,* and *Captain Thomas Stapleton.*

*Captain Otis D. Chapoton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper, Captain Harvey L. Zuckman,* and *First Lieutenant Joel Robinson.*

## Opinion of the Court

QUINN, Chief Judge:

This is an appeal from a conviction for an unauthorized absence of almost six months and larceny of over $1,700.00, in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 USC §§ 886 and 921, respectively. The point at issue concerns the instructions on the larceny charge.

The accused was the enlisted clerk in charge of the Prisoners' Personal Deposit Fund at the Post Stockade, Fort Bragg, North Carolina. The Fund consisted of money taken for safekeeping from prisoners in confinement, and of money received for them directly from visitors or by mail. In June 1961, the Correctional Officer, who had general supervision of, and responsibility for, the Fund, was placed on orders for overseas assignment. At the same time, the Fund was due for its "yearly audit." "To clear" his responsibility, the Correctional Officer requested an audit by personnel of the Corps Comptroller Division. The accused turned over the records in his possession to the auditors. Examination of these indicated a proper balance, but the auditors wanted to verify certain accounts by personal inquiry of some prisoners. The accused was informed of the proposed verification, and said he would be present; instead, he absented himself

without authority and remained away until apprehended about six months later by agents of the Federal Bureau of Investigation.

Two separate audits of the Fund were made. They disclosed false entries and a substantial shortage, which began about March 1960. At trial, the accused admitted he knew of the existence of the shortage. He also admitted that at various times after he learned of the shortage, he submitted false statements as to the amount in the Fund. However, he maintained he never took any money from it. He said that some months after he took over stewardship of the Fund a prisoner who was cleaning his office accidentally burned a bag containing a number of checks belonging to "several different" prisoners. He decided to try to make up the shortage, which he estimated to be in "the area of 1700 or 1800 dollars." When the audit was undertaken, he decided to try to find the prisoner to "prevent" himself from being charged with larceny. He went absent without authority to find the prisoner whose name, he thought, was Everett L. Martin. During his unauthorized absence, he made two attempts to locate Martin, but had no success. After he was returned to military control, he discovered it was not Martin he wanted,

68

but "someone" else; he did not know whom that person was.

At the close of the evidence, the law officer held an out-of-court hearing to review the proposed instructions. A proposed instruction on the effect of accidental or negligent loss was amended at individual defense counsel's request. In open court, the law officer instructed, among other things, on the elements of the offense of larceny. He also advised the court-martial as to the effect of a failure to account as follows:

"The court is advised that the mere failure on the part of one who is custodian of property to account for or to deliver entrusted funds at a logical time, when an accounting or delivery is required, does not in and of itself constitute larceny, although it may permit an inference that the custodian has wrongfully converted the property to his own use. This inference, if drawn, must be considered by the court together with all the other facts and circumstances of the case in determining the issue of the accused's guilt or innocence. Such inference is not mandatory. It can be accepted of rejected as the court deems fit.

"In this case evidence has been introduced tending to show that there was a shortage of funds as a result of accidental or negligent loss. This constitutes a defense to larceny even though the accidental or negligent loss may have been due to wanton, willful or unreasonable disregard for security procedures established to safeguard the fund. Consequently unless you are satisfied beyond a reasonable doubt that this shortage was not the result of accidental or negligent loss you must acquit the accused."

The prosecution's principal effort was aimed at establishing a deficiency in the Fund, and showing the alteration of various records relating to the Fund. Evidence of this kind will support an inference that the custodian unlawfully converted the missing amount to his own use. See United States v Valencia, 1 USCMA 415, 421, 4 CMR 7; United States v McCarthy, 196 F2d 616, 618 (CA 7th Cir) (1952). Failure or refusal to comply with a timely demand for return of money entrusted to another, and the failure or refusal to account when an accounting is due will also permit an inference of wrongful conversion. United States v Sellers, 12 USCMA 262, 30 CMR 262; United States v Crowell, 9 USCMA 43, 25 CMR 305. However, deficiency and false entries are different in nature from the failure to comply with a timely demand or failure to account when an accounting is due. If there is no evidence of one or the other of these facts there is no basis for an instruction on the inference to be drawn therefrom. As early as United States v Ginn, 1 USCMA 453, 456, 4 CMR 45, we pointed out that " 'the law of the case' " depends upon the evidence actually presented to the court-martial. See also United States v Acfalle, 12 USCMA 465, 31 CMR 51. If not related to the evidence in the case, even a correct statement of law may possibly mislead the court-martial to the prejudice of the accused. See United States v Davis, 13 USCMA 125, 126, 32 CMR 125; cf. United States v Houghton, 13 USCMA 3, 32 CMR 3. The evidence here, however, reasonably supports the conclusion that an accounting of his stewardship of the Fund had been demanded of the accused. Consequently, an instruction on the inference that may be drawn from failing or refusing to account, when an accounting is due, was proper.

We turn next to the content of the instructions. In a number of cases we have commented on the inference of wrongful conversion which may be drawn from the failure to account when an accounting is due. In that connection we said in United States v Crowell, supra, at page 47, "The mere failure on the part of a custodian to account for entrusted funds does not in and of itself constitute a larceny. However, a refusal to account when demand is made or when an accounting is due will permit an inference that the custodian has wrongfully converted the property to his own use." The first of

**69**

the two instructions quoted above shows close correspondence to the statement of the inference in the *Crowell* opinion. But the construction of the first sentence of the instruction is awkward. The sentence is long, and the "although" clause at the end tends to obscure the meaning. It is arguable that if the words "mere failure . . . to account" are substituted for their pronoun "it" in the clause, there is a tendency to disregard the qualification that the failure to account must occur at a time when an accounting is due. Whether the tendency would justify reversal, if the challenged sentence stood alone, need not detain us. Other parts of the instructions compel the conclusion the court-martial understood that the mere failure to account would not support an inference of wrongful conversion. The court's attention was specifically called to the defense evidence of accidental loss; and the court members were instructed that a finding of guilty could not be based upon such a loss, even though due to "wanton, willful or unreasonable disregard for security procedures established to safeguard the fund." We are satisfied that, notwithstanding any inartfulness that may exist in the first sentence, the court-martial was not misled as to the correct basis upon which it could predicate an inference that the accused wrongfully converted part of the Prisoners' Personal Deposit Fund to his own use. See United States v Scales, 10 USCMA 326, 27 CMR 400.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.