UNITED STATES, Appellee

v

ROBERT M. SITREN, Private, U.S. Marine Corps, Appellant

16 USCMA 321, 36 CMR 477

No. 19,291

August 19, 1966

*Captain L. G. Bohlen,* USMC, argued the cause for Appellant, Accused.
*Lieutenant Jean E. Van Slate,* USN, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

We granted the appellant's petition for review to consider whether the president erred by his failure to instruct the court on self-defense as raised by the evidence.

The appellant was tried and convicted by special court-martial on a charge of assault and battery. The entire thrust of his defense was that he acted in self-defense. He so testified, as did his two witnesses. Trial counsel recognized the issue for, in commenting on the appellant's testimony in his argument to the court, he stated that the appellant "placed himself within inches of the victim and then supposedly acted in a self-defense. This is ridiculous."

An accused is entitled to have presented instructions relating to any defense theory for which ■ there is evidence in the record. United States v Amie, 7 USCMA 514, 22 CMR 304; United States v Mathis, 15 USCMA 130, 35 CMR 102; United States v Bellamy, 15 USCMA 617, 36 CMR 115. As we stated in United States v Smith, 13 USCMA 471, 474, 33 CMR 3:

". . . What is contemplated is the affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them."

The basic responsibility for proper instructions rests upon the law officer, or, as in this case, the president of a special court-martial (Article 51(c), Uniform Code of Military Justice, 10 USC § 851; Manual for Courts-Martial, United States, 1951, paragraph 73; United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Stephen, 15 USCMA 314, 35 CMR 286; United States v Nickoson, 15 USCMA 340, 35 CMR 312), and "the court is insufficiently informed as to the 'law of the case' without legal explanation of these [affirmative] defenses, where properly raised." United States v Ginn, supra, at page 456.

Concededly, defense counsel did not ask for additional instructions or object to those given. However, as we said in United States v Ebard, 12 USCMA 715, 31 CMR 301, where it is clear from the evidence presented and the relative positions of the parties to the trial that a clear miscarriage of justice would result were we to enforce the doctrine of waiver, we are reluc-

tant to charge an accused with the responsibility of his counsel's failure to seek appropriate guidance for the court members. In any event, plain error may be noted for the first time on appeal. United States v Stephen, supra.

Accordingiy, we hold that the president erred by his failure to instruct the court on the defense of self-defense.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In my opinion, reversal of this conviction is totally unjustified. The Government's witnesses, including Watkins, the victim of the accused's assault, established beyond any doubt that the accused struck Watkins, without provocation or justification. As one impartial eyewitness testified, "SITREN come up to the Lance Corporal WATKINS, he tapped him on the shoulder and he turned around and they exchanged words and Lance Corporal WATKINS turned and started to walk off. Private SITREN grabbed him by the shoulder and swung him around and started hitting him. Lance Corporal WATKINS went to the ground." However, the majority maintain there is testimony by the accused and "his two witnesses" to the effect that the accused "acted in self-defense" and he is, therefore, entitled to an instruction on that theory. I find no support for that conclusion in the defense testimony.

One of the two defense witnesses, referred to by the majority, testified as follows:

". . . I think SITREN was trying to talk to WATKINS and he didn't want to talk to SITREN and SITREN, it looked like to me, was just trying to talk to him about something, I don't know just exactly what and all of a sudden WATKINS turned around, put his hand up and said something like

'will you just move out of the way' or something and SITREN hit him."

The second witness testified he saw the accused "arguing with WATKINS." Watkins "made a gesture with his hand." The witness did not, as the first witness did, say anything about the words which accompanied the gesture, and he made no attempt to describe it, other than volunteer inadmissible hearsay to the effect that the accused "must have thought it was a movement."

Turning to the accused's testimony, I am unable to read it as anything but a judicial admission that he wrongfully prevented Watkins from proceeding on his rightful way; and that he had no ground whatever, much less a reasonable ground, upon which to believe that Watkins was going to commit an assault upon him. See United States v Regalado, 13 USCMA 480, 33 CMR 12. In its material aspects, the accused's testimony is, as follows:

". . . I seen WATKINS walking with this other man around the other end of the parking lot and I tried to approach him. . . . I stopped him, I said, 'Watkins, I want to talk to you' and he turned around and said, 'Wait a minute SITREN, I am arguing with this man' . . . .

. . . . .

". . . I was in between these two individuals, . . . I didn't know what he was going to do, he just turned around real fast and I seen his hand coming at me and *I didn't know what to do* so I just hit him. There was something coming at me, it looked like his hand, he turned around and I hit him and we started fighting. . . .

. . . . .

". . . When I first approached him I asked him, 'WATKINS, I want to talk to you' and he told me not now, 'Wait a minute I am arguing with this other guy.' At that time he was facing this other man and I was sort of in between them and I was just standing there and I saw it happen so fast, I seen his

**323**

hand coming at me. *I don't know if he turned around,* but I hit him in just a reflex action." [Emphasis supplied.]

As to the support the majority find in trial counsel's assessment of the evidence, this is what he said in his opening argument:

". . . [I]t has been conclusively established by the prosecution that Private SITREN approached this man, even if we assume for the purpose of my argument that there was some disturbance between Lance Corporal WATKINS and the other man, he injected himself into this. He placed himself as close as he possibly could get and then pursued to, well to hit Lance Corporal WATKINS about the head and shoulders as the photograph demonstrated, and as the witnesses conclusively established. There was no reason for him to do this. He merely injected himself into this argument, if there was one and as we noted, and as the victim testified, there had been bad words in the past. I think the accused knows this, through his own testimony between WATKINS and SITREN. Apparently SITREN had been at the club and he came up injected himself in this argument and proceeded to pound him."

The comment quoted in the majority opinion was a response to defense counsel's argument. Defense counsel contended that "WATKINS brought the fight on himself by *pushing* SITREN away in the manner in which he did."[1] (Emphasis supplied.) To this assertion in the defense argument, trial counsel responded as follows:

". . . This man here again entered or interjected himself, that was no business of his, but whatever it was [he] placed himself within inches of the victim and *then supposedly acted in a self-defense.* This is ridiculous." [Emphasis supplied.]

Indeed, the defense argument was "ridiculous." More importantly, the defense argument is not evidence; and there is just no evidence the accused acted in self-defense. I would, therefore, affirm the decision of the board of review.

---

[1] There was never any testimony that Watkins *pushed* the accused. At one point, defense counsel used the word in a question to a defense witness, but the witness did not incorporate the assertion as part of his answer.